1

2

3

4

5

6              **UNITED STATES DISTRICT COURT**

7              **EASTERN DISTRICT OF CALIFORNIA**

8

9    **STAN SEVERI and MYRANDA SEVERI,**          **CASE NO. 1:17-CV-0931 AWI JLT**

10                **Plaintiff**

11        **v.**                                   **ORDER ON DEFENDANTS' MOTION
                                                    TO STRIKE**

12   **COUNTY OF KERN, KERN COUNTY
     SHERIFF DONNY YOUNGBLOOD,**
13   **DEPUTY GABRIEL ROMO, and DOES**             (Doc. No. 6)
     **1-10 inclusive,**
14
                 **Defendants**
15

16

17          This civil rights action stems from an encounter by Plaintiffs Stan and Myranda Severi

18   with members of the Kern County Sheriff's Department.  Currently before the Court is

19   Defendants' Rule 12(f) motion to strike.  For the reasons that follow, the motion will be granted in

20   part and denied in part.

21

22                              **BACKGROUND**

23          On December 11, 2016, Kern County Sheriff's Deputies responded to a call in Tehachapi

24   that Plaintiffs' minor son was either missing or had run away.  Later, the deputies were informed

25   that Plaintiffs' son had been located and retrieved by his mother, Myranda Severi.  Without

26   justification, Defendant Deputy Gabriel Romo demanded Plaintiffs' minor daughter be turned

27   over to him.  Deputy Romo refused to let Stan Severi speak with Myranda.  Deputy Romo then

28   unlawfully shot Stan Severi.  Deputy Romo then placed Stan Severi in handcuffs and deliberately

refused to provide any medical care or call 911.  Deputy Romo ordered Myranda to not take pictures of the incident, to not talk to the media, and to put away her cell phone.  Romo forced Myranda to remain at the house for four and half hours.

Plaintiffs filed this lawsuit in the Kern County Superior Court.  Defendants removed the matter to this Court in July 2017.  In part, the Complaint alleges a claim for *Monell* liability based on "policies, procedures, customs, and practices which permitted and encouraged their Sheriff's deputies while on duty and while off duty to unjustifiably, unreasonably, and in violation of Fourth and Fourteenth Amendments shoot persons."  Complaint at ¶ 32.  As relevant to this motion, Paragraph 34 under the *Monell* claim alleges:

> Said policies, procedures, customs, and practices called for the refusal of defendants . . . to investigate complaints of previous incidents of wrongful shootings as other allegations of excessive force made against on-duty deputies and, instead, officially claim that such incidents were justified and proper.  This is further evidenced by the facts that, for example and without limitation, as reported by *The Guardian* newspaper in 2015:

> (i)      Kern County is the deadliest county per capita in the United States for law enforcement killings;

> (ii)     In 2015, at least 13 people were killed by law enforcement officers in Kern County, which then had a population of just under 875,000, while during the same period, 9 people were killed by the NYPD across the five counties of New York City, where almost 10 times as many people lived and about 23 times as many sworn law enforcement officers patrolled;

> (iii)    All but one fatal shooting by Kern County Sheriff's Deputies over the past decade were publicly ruled justified by panels of senior officers;

> (iv)    Kern County Sheriff's Department Deputies have been caught rewarding colleagues for aggressive use of batons with a "baby seal" prize for the best clubbing;

> (v)     Kern County Sheriff's Department Deputies have modified their patrol cars with decals declaring "We'll kick your ass;"

> (vi)    Of the 10 arrest-related deaths recorded by Kern County Sheriff's Department following a physical clash since 2005, according to a review of records, all 10 were unarmed men; and

> (vii)   In 8 of the 9 Kern County Sheriff Department cases where inquiries were concluded, the deputies' actions were ruled justified by commanders. Public payroll records indicate all deputies involved in these cases – at least 33 – returned to work.  In the ninth case, a deadly beating involving at least 15 deputies, three were convicted of crimes and three more appeared to lose their jobs, but nine returned to duty.

# **LEGAL STANDARD**

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir 2010); Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.1983). Immaterial matter is defined as matter that "has no essential or important relationship to the claim for relief or the defenses being pleaded." Whittlestone, 618 F.3d at 974; Hawkins v. Medtronic, Inc., 62 F.Supp.3d 1144, 1149 (E.D. Cal. 2014). Impertinent matter is defined as "statements that do not pertain, and are not necessary, to the issues in question." Whittlestone, 618 F.3d at 974; Hawkins, 62 F.Supp.3d at 1149. Scandalous matters are allegations "that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court," and "includes allegations that cast a cruelly derogatory light on a party or other person." Hawkins, 62 F.Supp.3d at 1149; see also Pigford v. Veneman, 215 F.R.D. 2, 4 (D. D.C. 2003). Redundant allegations are allegations that "constitute a needless repetition of other averments or are foreign to the issue." Hawkins, 62 F.Supp.3d at 1149 Sliger v. Prospect Mortg., LLC, 789 F.Supp.2d 1212, 1216 (E.D. Cal. 2011). Granting a motion to strike may be proper if it will make the trial less complicated or if allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading will be prejudicial to the moving party. See Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527-28 (9th Cir. 1993);[1] Hawkins, 62 F.Supp.3d at 1149. The grounds for the motion to strike must appear on the face of the pleading or from matters that are properly the subject of judicial notice. See Fantasy, 984 F.2d at 1528. Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy. Hawkins, 62 F.Supp.3d at 1149; Sliger, 789 F.Supp.2d at 1216.

---

[1] Reversed on other grounds, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)

# DEFENDANTS' MOTION

*Defendants' Arguments*

Defendants argue that Plaintiff's factual statements from an article in The Guardian newspaper should be stricken because the statements are incorrect, misleading, irrelevant, prejudicial, and scandalous. Paragraphs 34(i), 34(ii), and 34(iii), should be stricken because the statistics identified are not limited to the Sheriff's Department. Paragraph 34(iv) should be stricken because the "baby seal" incident was an isolated occurrence at a small, outlying sub-station which was addressed through internal discipline, the incident did not constitute a formal policy or a widespread informal policy, and the incident involved batons, not guns. Paragraph 34(v) should be stricken because the "kick your ass" decal was placed on one car for a short period as a joke, and a jury has already determined that the incident did not reflect a "policy" of the Sheriff's Department. Paragraph 34(vi) regarding the arrest-related deaths of 10 unarmed men is false, as court records demonstrate that 6 of the men were armed. Paragraph 34(vii) should be stricken because the shooting has not been ruled "justified" by any review boards. The language of Paragraph 34 is immaterial, impertinent, unduly prejudicial, and inflammatory. Permitting this language to remain in the case will prejudice the defendants in their trial preparation, possibly inflame the public, and interfere with Defendants' ability to have a fair trial. Paragraph 34 serves no meaningful purpose in this case.

*Plaintiffs' Opposition*

Plaintiffs argue that the allegations in Paragraph 34 are directly relevant to the *Monell* issues in this case, specifically the County's custom and practice of using deadly force and the culture of permissiveness that pervades the County. The allegations in Paragraph 34 were compiled and published in a large international newspaper and has been in the public domain for several years. Defendants' fears about how the allegation will be used in public is nothing more than speculation and conjecture. With respect to the specific subparagraphs, Paragraph 34(i) through 34(v) are relevant and proper to provide context for the customs and practices of Kern County and how those larger customs and policies shaped the way in which Defendants acted. Paragraph 34(vi) is not inaccurate as Defendants claim as the public documents of the specific

4

cases identified by Defendants do not state that the 10 victims were unarmed. Finally, Paragraph

34(vii) also acts to provide background to the underlying case and is not meant to refer to the exact

circumstances of this case. Any specifics that may not be as relevant can be addressed through the

discovery process and other procedures, not through a motion to strike.

*Discussion*

The allegations at issue are found exclusively in Paragraph 34, and are comprised of seven

subparagraphs. The Court will analyze each subparagraph separately.

1.    Paragraph 34(i)

Paragraph 34(i) is one sentence and reads:  "Kern County is the deadliest county per capita

in the United States for law enforcement killings." There are two aspects of this allegation that

make it "immaterial" under *Whittlestone*.

First, Kern County as a whole is geographically identified. Making a statement about the

total number of "law enforcement killings" within Kern County as a whole is not helpful or

material. This is because in addition to the Kern County Sheriff's Department, there are eleven

city police departments and the California Highway patrol that are all active and performing law

enforcement activities within the geographic area of Kern County.[2] There is only one municipal

entity whose policing practices are relevant and at issue in this case, and that is the Kern County

Sheriff's Department. Lumping together all deaths from all policing agencies within Kern County

does not sufficiently identify conduct by the Kern County Sheriff's Department in any meaningful

way. Contrary to Plaintiffs' arguments, unless the activities of the Kern County Sheriff's

Department are identified, a general statement that covers literally every policing agency within

Kern County does not reflect on the Kern County Sheriff's Department.

Second, the policies or customs identified in the Complaint relate to accepting and

condoning unreasonable shootings. See Complaint at ¶ 32. There is nothing about Paragraph 34(i)

that discusses shootings. There are many ways in which a death can result from law enforcement

conduct. E.g. County of Sacramento v. Lewis, 523 U.S. 833, 836-37 (1998) (individual died in

---

[2] https://en.wikipedia.org/wiki/List_of_populated_places_in_Kern_County,_California. Additionally, as par to their reply, Defendants identify several other independent law enforcement agencies operating within Kern County.

connection with a high speed police chase); <u>Huizar v. City of Anaheim</u>, 840 F.3d 592, 595-96 (9th Cir. 2016) (shooting death); <u>Estate of Amaro v. City of Oakland</u>, 653 F.3d 808, 811 (9th Cir. 2011) (alleged beating death); <u>Phillips v. County of Fresno</u>, 2015 U.S. Dist. LEXIS 100573, *3-*5 (E.D. Cal. July 30, 2015) (county prison guards failed to protect decedent from other inmates); <u>Sanders v. City of Fresno</u>, 551 F.Supp.2d 1149, 1157-61 (E.D. Cal. 2008) (individual died as part of physical confrontation involving tasers).  Law enforcement deaths that are not the result of a shooting do not establish a policy or custom of accepting unreasonable shootings.

Because Paragraph 34(i) does not differentiate between policing agencies (and particularly fails to identify conduct specifically by the Kern County Sheriff's Department), and because the allegation does not discuss law enforcement shootings, the general reference to "law enforcement killings in Kern County" has no essential or important relationship to the claims in this case.  <u>See</u> <u>Whittlestone</u>, 618 F.3d at 974; <u>Hawkins</u>, 62 F.Supp.3d at 1149.  Therefore, Paragraph 34(i) is immaterial and will be stricken.

2.    Paragraph 34(ii)

Paragraph 34(ii) purports to compare law enforcement related deaths in Kern County to law enforcement deaths by the New York Police Department in the year 2015.  Doc. No. 1.  This paragraph suffers from the same problem as Paragraph 34(i).  It lumps together all law enforcement related deaths in the geographic region of Kern County without differentiating conduct by the Kern County Sheriff's Department, and it does not identify law enforcement shootings.  Without such differentiation, there is only a general statement that does not relate to the relevant entity or the relevant policy or custom.  Thus, Paragraph 34(ii) has no essential or important relationship to any claim in this case, and it will be stricken as immaterial.  <u>See</u> <u>Whittlestone</u>, 618 F.3d at 974; <u>Hawkins</u>, 62 F.Supp.3d at 1149.

3.    Paragraph 34(iii)

Paragraph 34(iii) alleges that all but one fatal shooting by Kern County Deputies over the past decade were ruled justified by senior officers.  Unlike the prior two paragraphs, Paragraph 34(iii) identifies relevant law enforcement activities by the Kern County Sheriff's Department, in particular fatal shooting reviews.  However, the materiality of this paragraph does not appear to be

particularly strong. The number of fatal shootings is not provided and this case does not involve a fatal shooting. Moreover, courts have long recognized that statistical information that is unsupported by any evidence that the shootings were unlawful has very little, if any at all, relevance. See Strauss v. City of Chicago, 760 F.2d 765, 768-69 (7th Cir. 1985); Johnson v. Holmes, 2017 U.S. Dist. LEXIS 173743, *26-*28 (W.D. Va. Oct. 19, 2017); Lopez v. City of Plainfield, 2017 U.S. Dist. LEXIS 10220, *37-*38 (D. N.J. Jan. 25, 2017); Stratakos v. Nassau Cty., 2016 U.S. Dist. LEXIS 162714, *12-*14 (E.D.N.Y. Nov. 23, 2016); Johnson v. City of Vallejo, 99 F.Supp.3d 1212, 1219-20 (E.D. Cal. 2015); Barnes v. City of Milton, 2009 U.S. Dist. LEXIS 95460, *8 (W.D. Wash. Oct. 13, 2009); Hocking v. City of Roseville, 2008 U.S. Dist. LEXIS 33135, *17-18 (E.D. Cal. Apr. 21, 2008). Nevertheless, a high level of detail and materiality is not necessary. It is arguable that the evidence may be used in conjunction with other evidence to support a custom of tolerating improper shootings, and that custom would bear on the facts of this case. While the materiality of Paragraph 34(iii) appears very low, the Court cannot hold at this time that Paragraph 34(iii) has *no* import to Plaintiffs' *Monell* claim. Because the allegation is not immaterial, see Whittlestone, 618 F.3d at 974, Paragraph 34(iii) will not be stricken.[3]

   4.   Paragraph 34(iv)

   Paragraph 34(iv) alleges that Kern County Sheriff's Deputies rewarded colleagues for aggressive use of batons with a "baby seal" prize. This paragraph properly identifies conduct by the Kern County Sheriff's Department. Nevertheless, the allegation refers to the use of a baton by officers. No baton was used in this case, and the policy or custom at issue has nothing to do with baton use. Rather, the custom and policy at issue deals with tolerating or condoning unreasonable shootings. See Complaint at ¶ 32. Because the "baby seal" prize relates to conduct that is not the subject of the policy or custom alleged, Paragraph 34(iv) has no import to Plaintiffs' claims and

---

[3] Paragraph 34(iii) is not redundant, impertinent, or scandalous for purposes of Rule 12(f). See Hawkins, 62 F.Supp.3d at 1149 (defining each term). Defendants contend that Plaintiffs may use Paragraph 34(iii) to mislead the public into thinking that the shooting in this case has been determined to be justified. However, this fear appears speculative and unsupported by the actual language of Paragraph 34(iii). Paragraph 34 expressly states that it is recapitulating facts reported by *The Guardian* in 2015, which pre-dates the shooting in this case. Further, Paragraph 34(iii) does not mention the shooting in this case and the shooting in this case was not fatal.

does not pertain to the *Monell* issues.  See Strauss, 760 F.2d at 768-69 (explaining *inter alia* that alleged prior constitutional violations must be similar to the constitutional violation at issue); Johnson, 2017 U.S. Dist. LEXIS 173743 at *26-*28 (same); Lopez, 2017 U.S. Dist. LEXIS 10220 at *37-*38 (same); Stratakos, 2016 U.S. Dist. LEXIS 162714 at *12-*14 (same); Johnson, 99 F.Supp.3d at 1219-20 (same); Barnes, 2009 U.S. Dist. LEXIS 95460 at *8 (same).  Thus, Paragraph 34(iv) is immaterial and impertinent and will be stricken as such.  See Whittlestone, 618 F.3d at 974; Hawkins, 62 F.Supp.3d at 1149.

     5.     Paragraph 34(v)

Paragraph 34(v) alleges that Kern County Sheriff's Deputies put "We'll kick your ass" decals on their patrol cars.  A similar analysis applies to this Paragraph as to Paragraph 34(iv).  Paragraph 34(v) properly identifies conduct by the Kern County Sheriff's Department, but again, the paragraph does not deal with shootings.  In fact, the only conduct at issue is placing a decal on a car, which in and of itself does not show a constitutional violation.  Although "We'll kick your ass" does suggest the threat of a constitutional violation, the threat seems to be implicating some form of physical force, such as a baton or fists.  Shootings or condoning shootings is not fairly implicated by Paragraph 34(v).  Because the car decal relates to conduct that is not the subject of the policy or custom alleged, Paragraph 34(v) has no import to Plaintiffs' claims and does not pertain to the *Monell* issues.  See Strauss, 760 F.2d at 768-69 (explaining *inter alia* that alleged prior constitutional violations must be similar to the constitutional violation at issue); Johnson, 2017 U.S. Dist. LEXIS 173743 at *26-*28 (same); Lopez, 2017 U.S. Dist. LEXIS 10220 at *37-*38 (same); Stratakos, 2016 U.S. Dist. LEXIS 162714 at *12-*14 (same); Johnson, 99 F.Supp.3d at 1219-20 (same); Barnes, 2009 U.S. Dist. LEXIS 95460 at *8 (same).  Thus, Paragraph 34(v) is immaterial and impertinent and will be stricken as such.  See Whittlestone, 618 F.3d at 974; Hawkins, 62 F.Supp.3d at 1149.

     6.     Paragraph 34(vi)

Paragraph 34(vi) alleges that in the 10 police related deaths involving Kern County Sheriff's Department personnel since 2005, all 10 incidents involved unarmed decedents.  Defendants cite six cases that they contend show that Paragraph 34(vi) is false because the

decedents were actually armed. Plaintiffs contend that the publically available documents do not support Defendants' representations of the cases.

There are two problems with Paragraph 34(vi). First, the paragraph involves "police related deaths." As discussed with respect to Paragraph 34(i), there are many ways in which a death can result from law enforcement conduct, being shot is only one of them. The policy and custom that is at issue in this case is tolerating or condoning unreasonable shootings. See Complaint at ¶ 32. Paragraph 34(vi) does not limit itself to the relevant conduct (or to any specific conduct). Like Paragraphs 34(i), Paragraph 34(vi) is so overbroad that it has no import to the claims at issue and thus, is immaterial. See Whittlestone, 618 F.3d at 974 Hawkins, 62 F.Supp.3d at 1149.

Second, the Court has reviewed the six cases cited by Defendants, all of which were litigated in the Eastern District of California.[4] In *McDaniel v. County of Kern*, 1:15-cv-1320 JAM JLT, the plaintiff alleged that the decedent was unarmed, but the deputies contended that the decedent was armed with a gun. See *McDaniel* Doc. Nos. 1, 43, 47. *McDaniel* settled prior to trial. See id. at Doc. No. 58. In *D.G. v. County of Kern*, 1:15-cv-0760 JAM JLT, the deputies confronted a decedent who was holding a knife. See *D.G.* at Doc. Nos. 21, 73. There was a dispute as to whether the decedent was still holding the knife at the time gunshots were fired. See id. at Doc. No. 73. *D.G.* settled prior to trial. See Doc. No. 88. In *Medrano v. County of Kern*, 1:12-cv-0564 JLT, the docket is ambiguous as to whether the parties agreed that the decedent was armed with a knife. The joint scheduling statement can be read as the plaintiff either denying that the decedent had a knife or denying that the decedent posed any threat to the officers even though he had a knife. See *Medrano* Doc. No. 24. *Medrano* was dismissed by stipulation prior to trial. See id. at Doc. Nos. 47, 48. In *Chavez v. County of Kern*, 1:12-cv-1004 JLT, the decedent was armed with a knife.[5] See *Chavez* at Doc. No. 38, 43. *Chavez* settled prior to trial. See *Chavez* at

---

[4] The Court takes judicial notice of the dockets in these cases, and of the particular docket entries cited. See Fed. R. Evid. 201; Porter v. Ollison, 620 F.3d 952, 955 n.1 (9th Cir. 2010); United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

[5] Plaintiffs' counsel represents that he was counsel in the *Chavez* case, and that, although the decedent was armed with a knife, the decedent was suicidal and not a threat to the officers. While a dispute may exist as to the threat posed by the decedent, counsel confirms that the decedent was in fact armed.

9

Doc. Nos. 62, 65.  In *Turner v. County of Kern*, 1:11-cv-1366 AWI SKO, the deputy testified that

he shot the decedent as the decedent attempted to hit another deputy  with a plastic bag that

contained beer cans.  See Doc. No. 142.  *Turner* settled following a partial mistrial.  See Doc. Nos.

136, 150, 151.  Finally, in *Lee v. County of Kern*, 1:07-cv-1337 LJO DLB, the decedent was

armed with a hammer.  See *Lee* at Doc. Nos. 26, 29, 46.  *Lee* was closed following a stipulated

dismissal.  See Doc. No. 52.  Based on the dockets and filings in these cases, in none of them can

it be said that the decedent was clearly and indisputably unarmed.  There appeared to be a genuine

factual dispute about whether the decedent was armed in *McDaniel*, *D.G.*, and possibly *Medrano*.

The decedent in *Turner* was using an unconventional weapon that was not obviously dangerous.

Importantly, however, the decedents in *Chavez* and *Lee* were armed with weapons.  At a

minimum, the armed status of the decedents in *Chavez* and *Lee* make the allegation in Paragraph

34(vi) demonstrably false.  It is unknown how a demonstrably false assertion can be material to

this case.

 Because Paragraph 34(vi) is demonstrably false, and is unduly overbroad, it has no

essential or important relationship to any claim or defense in this case and will be stricken as

immaterial.[6]  See Whittlestone, 618 F.3d at 974; Hawkins, 62 F.Supp.3d at 1149.

 7. Paragraph 34(vii)

 Paragraph 34(vii) alleges that in 8 of 9 cases, the Kern County Sheriff's Department

concluded that the deputies' actions were justified, and that all employees in the 8 justified cases

returned to work.  Paragraph 34(vii) also alleges that in the ninth case, of the 15 deputies involved,

three were terminated, three were imprisoned, and the remaining nine returned to duty.

 As is evident, Paragraph 34(vii) identifies conduct by the Kern County Sheriff's

Department.  However, like Paragraphs 34(iv), 34(v), and 34(vi), Paragraph 34(vii) does not make

any representations or limit itself in any way to shootings.  Because the policy and custom that is

the subject of the Complaint is the policy or custom of tolerating or condoning unreasonable

shootings, Paragraph 34(vii) identifies no relevant conduct.  Moreover, as discussed with respect

---

[6] By granting the motion to strike, the Court is not holding that any of the 10 cited cases (four of which have not been identified) have no relevance to the case.  The Court is simply holding that Paragraph 34(vi) as *alleged* is immaterial.

to Paragraph 34(iv), merely identifying statistical evidence without any indication of unconstitutional conduct does not demonstrate an unconstitutional policy or custom. For Paragraph 34 to be material, the statistical evidence needs to be buttressed with an allegation that the findings of "justified" were not warranted, and that the constitutional violations in the "justified" cases are similar to the constitutional violation in this case. See Strauss, 760 F.2d at 768-69; Johnson, 2017 U.S. Dist. LEXIS 173743 at *26-*28; Lopez, 2017 U.S. Dist. LEXIS 10220 at *37-*38; Stratakos, 2016 U.S. Dist. LEXIS 162714 at *12-*14; Johnson, 99 F.Supp.3d at 1219-20; Barnes, 2009 U.S. Dist. LEXIS 95460 at *8; Hocking, 2008 U.S. Dist. LEXIS 33135 at *17-*18. Because Paragraph 34(vii) does not do this, it has no import to Plaintiffs claims, and it will be stricken as immaterial. See Whittlestone, 618 F.3d at 974; Hawkins, 62 F.Supp.3d at 1149.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to strike (Doc. No. 6) is DENIED with respect to Paragraph 34(iii) of Plaintiffs' Complaint;

2. Defendants motion to strike is otherwise GRANTED and Paragraphs 34(i), 34(ii), 34(iv), 34(v), 34(vi), and 34(vii) are STRICKEN from Plaintiff's Complaint; and

3. This case is referred to the Magistrate Judge for the purpose of conducting a scheduling conference.

IT IS SO ORDERED.

Dated:   December 19, 2017   

_____
SENIOR  DISTRICT  JUDGE